UNITED STATES DISTRICT COURT                                      JS-6
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES -- GENERAL

Case No.   **CV 16-601-JFW**
           [2:15-ap-01406-ER; 2:15-ap1404-ER]                    Date:  June 27, 2016

Title:     In Re Theodosios Roussos, et al.
           Theodosios Roussos, et al -v- Howard M. Ehrenberg, et al.

_____

**PRESENT:**
           **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

           **Shannon Reilly**                      **None Present**
           **Courtroom Deputy**                     **Court Reporter**


**ATTORNEYS PRESENT FOR PLAINTIFFS:**       **ATTORNEYS PRESENT FOR DEFENDANTS:**
           None                                         None

**PROCEEDINGS (IN CHAMBERS):        ORDER AFFIRMING BANKRUPTCY COURT'S
                                    DECEMBER 21, 2015 ORDER**

       On January 27, 2016, Appellants Theodosios and Paula Roussos (collectively, "Appellants")
filed an Appeal from the United States Bankruptcy Court's December 21, 2015 Order, After
Hearing, Granting Plaintiff's Motion for Preliminary Injunction Re Verified Complaint (1) for
Declaratory Relief; (2) to Vacate Sale for Fraud on the Court; (3) to Quiet Title; (4) for Turnover of
Property; (5) for Fraud; (6) for Breach of Fiduciary Duty; and (7) for Aiding and Abetting Breach of
Fiduciary Duty ("December 21, 2015 Order").  On April 18, 2016, Appellants filed their Opening
Brief.  On May 16, 2016, Howard M. Ehrenberg, Chapter 7 Trustee for the Estate of Appellant
Theodosios Roussos (the "Trustee") filed his Opening Brief.  On May 31, 2016, Appellants filed
their Reply Brief.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15,
the Court finds that this matter is appropriate for decision without oral argument.  After considering
the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background**

       **A.      The Acquisition of the Properties and the 1993 Bankruptcy Cases**

       In the early 1980's, August Michaelides ("August") invested with two friends, Harry and
Theodosios Roussos (the "Roussos Brothers"), to purchase apartment buildings located at 2727-
2741 Abbot Kinney Boulevard, Venice, California (the "Abbot Kinney Property") and 153 San
Vicente Boulevard, Santa Monica, California (the "San Vicente Property") (collectively, the
"Properties").  Pursuant to August's agreement with the Roussos Brothers, August was to receive a
thirty-three and one-third percent (33 1/3%) ownership interest in the Abbot Kinney Property and a
ten percent (10%) ownership interest in the San Vicente Property.  August died in 1992.

After August's death, his widow, Lula Michaelides ("Lula"), inquired about her *pro rata* share of the income from the Properties, and she eventually discovered that not only was she not receiving her *pro rata* share of income from the Properties, but that the Roussos Brothers had also failed to include August's name on the title to either the Abbot Kinney Property or the San Vicente Property.  As a result of these discoveries, Lula commenced an action for breach of fiduciary duty, fraud, and to quiet title on behalf of her husband's estate against the Roussos Brothers, among others, in the Los Angeles Superior Court, entitled *Lula Michaelides v. Theodosios Roussos*, LASC Case No. BC054809 (the "State Court Action").

After Lula filed the State Court Action, on June 14, 1993, the Roussos Brothers filed separate Chapter 11 petitions commencing their respective bankruptcy cases.  Subsequent to the filing of the Chapter 11 petitions, on March 2, 1994, a judgment  was entered in the State Court Action in favor of Lula, awarding her monetary damages and quieting her title to the 10% interest in the San Vicente Property and the 33 1/3% interest in the Abbot Kinney Property (the "Original Judgment").  On June 15, 1994, an amended judgment was entered in the State Court Action in favor of Lula, awarding her $600,000 in compensatory damages, $400,000 in punitive damages, $10,000 in costs, and quieted her title to the 10% interest in the San Vicente Property and the 33 1/3% interest in the Abbot Kinney Property (the "Amended Judgment").

On March 3, 1994, the day following the entry of the Original Judgment in the State Court Action, Robert Beaudry (Beaudry") a now disbarred attorney who was counsel for the Roussos Brothers, formed S.M.B. Investors Associates, L.P., a California limited partnership ("S.M.B.").  On April 5, 1994, Beaudry formed O.F. Enterprises, L.P., a California limited partnership ("O.F.").

### B.    The Sale of the Properties to S.M.B. and O.F.

On May 9, 1994, in their bankruptcy cases, the Roussos Brothers filed a Motion By Debtor-In-Possession for Order Authorizing Sale of Real Property Free and Clear of Co-Owner Interests and Liens, and Authorizing Disbursement of Sales Proceeds (the "Sale Motion").  In the Sale Motion, the Roussos Brothers sought approval of the sale of the Properties to the newly formed S.M.B. and O.F.  Specifically, the Roussos Brothers sought, among other things, authority to (1) sell the Abbot Kinney Property to O.F. free and clear of Lula's interest for the amount of $500, plus the assumption of debts secured by the Abbot Kinney Property; and (2) sell the San Vicente Property to S.M.B. free and clear of Lula's interest for the amount of $0.00, plus the assumption of debts secured by the San Vicente Property.  On August 5, 1994, the Bankruptcy Court granted the Sale Motion (the "Sale Order").

The Bankruptcy Court based its decision to approve the Sale Motion on the separate declarations from the Roussos Brothers allegedly falsely stating that, among other things: (1)  the proposed sales were arms-length, third party transactions; (2)  neither one of the Roussos Brothers were partners or had an interest in O.F. or S.M.B.; (3) prior to the proposed transactions, neither one of the Roussos Brothers knew of O.F. or S.M.B. or their partners; (4) neither one of the Roussos Brothers were insiders of O.F. or S.M.B.; and (5) the Properties were over encumbered. As a result of their false statements, the Bankruptcy Court approved the sale of the Properties to S.M.B. and O.F. free and clear of the interests of Lula in the Properties and to the prejudice of the other creditors.

Initials of Deputy Clerk  _sr_

On October 19, 1994, pursuant to the Sale Order, the Roussos Brothers executed a grant deed conveying title to the Abbot Kinney Property to O.F., which was recorded on October 24, 1994, as Instrument No. 94-1923612 (the "O.F. Grant Deed").  On November 29, 1994, pursuant to the Sale Order, the Roussos Brothers executed a grant deed conveying title to the San Vicente Property to S.M.B., which was recorded on December 5, 1994, as Instrument No. 94-216228 (the "S.M.B. Grant Deed").

Shortly after the conveyance of the Properties to O.F. and S.M.B. their Chapter 11 cases were converted to Chapter 7 cases.  After conversion of their cases, the Roussos Brothers received discharges except for their indebtedness to Lula under the Amended Judgment, which was determined to be non-dischargeable, and their bankruptcy cases were subsequently closed in 2002.

**C.     Lula Attempts to Enforce Her Judgment and Discovers the Alleged Fraud**

After the bankruptcy cases were closed, Lula sought to enforce the Amended Judgment against the Roussos Brothers.  During her attempts in 2015 to enforce the Amended Judgment, Lula discovered the existence of an arbitration proceeding between the Roussos Brothers regarding the management of their entities and the ownership of various properties.  The arbitration had been commenced on June 19, 2012, when Harry and Christine Roussos filed a petition in Los Angeles Superior Court (the "Petition") to compel Theodosios and Paula Roussos to arbitrate their numerous disputes (the "Arbitration Action").

Although Harry had testified during his 2014 judgment debtor examination by Lula that all of his properties were "wiped out" in his bankruptcy, in his June 13, 2012 declaration attached to the Petition, Harry declared that for more than 20 years he and his brother owned and operated various multi-family rental properties in Los Angeles and San Bernardino Counties and that they continued to oversee the daily operations of these properties.  In addition, Harry declared that the Roussos Brothers had entered into an arbitration agreement in order to resolve any potential disputes regarding their properties, including the dissolution of their businesses and the equitable distribution of the assets owned by those businesses.  A letter from Harry's attorney to Theodosios's attorney was attached to the Petition.  In that letter, Harry's attorney stated "Harry and Christine assert the following claims in arbitration, and hereby reserve the right to amend their claims at a later date: . . . For dissolution of [S.M.B.], Liro, Inc., [O.F.], and any related or affiliated entities, and distribution of all assets managed by those entities to Harry and Ted per their respective ownership interests in said entities."

On August 15, 2012, a declaration was filed in the Arbitration Action by David Haberbush ("Haberbush"), one of the Roussos Brothers' former attorneys, who stated that he had acted as legal counsel, mediator, and arbitrator for Harry, Christine, Theodosios, and Paula "as to various matters, including, but not limited to, their business operations regarding the following properties . . . . : '(1) 153 San Vicente Blvd., Santa Monica, California. (2) 2727 through 2741 Abbot Kinney Blvd., Venice, California; (3) 2721 Abbot Kinney Blvd., Venice, California; (4) 39 Paloma Ave, Venice, CA; (5) 2209 Ocean Front Walk, Venice, CA; and (6) 580 WE Street, Colton, CA."  Attached to the August 15, 2012 declaration was a written offer made by Theodosios to purchase Harry's interest in the properties and businesses owned by the Roussos Brothers.

Initials of Deputy Clerk _sr_

### D.    The Adversary Proceeding

On August 4, 2015, after the Trustee was alerted to the disputes among the Roussos Brothers and their wives by counsel for certain of the judgment creditors, the Trustee investigated those disputes and discovered facts demonstrating that the Roussos Brothers and their wives directly or indirectly owned and controlled both S.M.B. and O.F. from the initial formation of each entity, and, therefore, committed a fraud on the Bankruptcy Court.  The Trustee filed identical Complaints against each of the Roussos Brothers (the "Adversary Proceedings").  In each of those Complaints, the Trustee alleged claims for relief for: (1) for Declaratory Relief; (2) To Vacate Sale for Fraud on the Court; (3) To Quiet Title; (4) for Turnover of Property; (5) for Fraud; (6) for Breach of Fiduciary Duty; and (7) for Aiding and Abetting Breach of Fiduciary Duty.

On November 25, 2015, the Court granted in part and denied in part motions to dismiss filed by the Roussos Brothers.  Although the Court dismissed the fifth, sixth, and seventh claims for relief with leave to amend, the Trustee ultimately decided against amending those claims.  The Roussos Brothers filed an additional motion to dismiss, which was denied by the Bankruptcy Court on April 14, 2016.

On November 25, 2015, the Trustee filed a Motion for Preliminary Injunction Re Verified Complaint (1) for Declaratory Relief; (2) To Vacate Sale for Fraud on the Court; (3) To Quiet Title; (4) for Turnover of Property; (5) for Fraud; (6) for Breach of Fiduciary Duty; and (7) for Aiding and Abetting Breach of Fiduciary Duty (the "Second Stay Motion") in order to maintain the status quo pending a final judgment or settlement in the Adversary Proceedings.[1]  In the Second Stay Motion, the Trustee sought to permanently enjoin the Arbitration Action pursuant to the Bankruptcy Court's equitable powers under 11 U.S.C. § 105(a) and pursuant to Federal Rule of Bankruptcy Procedure 7065, which incorporates Federal Rule of Civil Procedure 65.  On December 21, 2015, the Bankruptcy Court granted the Second Stay Motion.  Appellants appealed the December 21, 2015 Order.

## II.    Issue on Appeal

Appellants present the following issues on appeal:

1.    Whether the Bankruptcy Court erred in approving the Second Stay Motion, and entering the December 21, 2015 Order and injunction.

2.    Whether the Bankruptcy Court erred in determining the Trustee was likely

---

[1] On August 25, 2015, the Trustee filed a Motion for Order Imposing Stay Pursuant to 11 U.S.C. § 105(a) (the "Initial Stay Motion") in an effort to prevent the Roussos Brothers from further placing the Properties beyond the Trustee's reach.  On September 30, 2015, the Bankruptcy Court granted the Initial Stay Motion, and enjoined the Arbitration Action through December 23, 2015, without prejudice to the Trustee filing of a renewed motion for injunctive relief in the Adversary Proceedings, which resulted in the Trustee filing the Second Stay Motion.

to succeed on the merits.[2]

3.  Whether the Bankruptcy Court erred in determining the Trustee was likely to suffer irreparable harm.

4.  Whether the Bankruptcy Court erred in determining that the Trustee had suffered irreparable harm even though he did not allege that any damages were incurred pursuant to Rule 60(d) by virtue of sale of the then over encumbered Properties in 1994.

5.  Whether the Bankruptcy Court erred in determining whether the balance of equities tipped in the Trustee's favor.

6.  Whether the Bankruptcy Court erred in determining an injunction was in the public interest.

7.  Whether the Bankruptcy Court erred in applying the sliding scale test for preliminary injunctions as opposed to the traditional test as required by *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

8.  Whether the Bankruptcy Court erred in determining *res judicata* did not bar the assertions of the claims in the Complaint upon which the injunction was based.

9.  Whether the Bankruptcy Court erred in ordering that the preliminary injunction continue for the pendency of the Adversary Proceedings.

10. Whether the Bankruptcy Court has subject matter jurisdiction to make any of the preceding determinations or to enjoin any of the actions covered by the injunction.

## III.  Legal Standards

### A.  Standard of Review

The standard of review of bankruptcy court decisions by district courts is well-established, and uncontested by the parties.  When reviewing decisions of a bankruptcy court, district courts apply standards of review applicable to the courts of appeals when reviewing district court decisions.  *In re Baroff*, 105 F.3d 439, 441 (9th Cir.1997); *see also In re Fields*, 2010 WL 3341813,

---

[2]  Appellants list a number of sub-issues that they claim are relevant to the Trustee's likelihood of success on the merits.  However, the Court concludes that it does not need to address individually each of these sub-issues, which are simply a listing of each argument presented by the Trustee to support its request for a preliminary injunction or by Appellants in opposition to the request for a preliminary injunction, because the Court has concluded that the Bankruptcy Court did not err in determining that the Trustee was likely to succeed on the merits.

Initials of Deputy Clerk  _sr_

*2 (E.D. Cal. 2010) ("A district court's standard of review over a bankruptcy court's decision is identical to the standard used by circuit courts reviewing district court decisions.") (citation omitted).

The bankruptcy court's conclusions of law are reviewed *de novo*. *In re Sunnymead Shopping Center Co.,* 178 B.R. 809, 814 (9th Cir.1995) (*citing In re Pecan Groves of Arizona*, 951 F.2d 242, 244 (9th Cir. 1991)). District courts review the bankruptcy court's findings of fact for clear error. *In re Sunnymead Shopping Center Co.*, 178 B.R. at 814 (*citing In re Siriani*, 967 F.2d 302, 303–04 (9th Cir.1992)); *see also* Fed. R. Bank. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous"). District courts review a "bankruptcy court's choice of remedies . . . for an abuse of discretion, since it has broad equitable remedial powers." *In re Sunnymead Shopping Center Co.*, 178 B.R. at 814 (*citing In re Goldberg*, 168 B.R. 382, 284 (9th Cir. 1994) (other citations omitted.). The Ninth Circuit has held that, "[u]nder this standard, 'a reviewing court cannot reverse unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *In re Sunnymead Shopping Center Co.*, 178 B.R. at 814 (*quoting In re Goldberg*, 168 B.R. at 384).

With respect to review of a preliminary injunction, district court's review a bankruptcy court's decision to grant or deny the preliminary injunction and the scope of injunctive relief for an abuse of discretion. *See Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (*citing Walczak v. EPL Prolong, Inc.,* 198 F.3d 725, 730 (9th Cir.1999)). Such review is "limited and deferential." *Shelley*, 344 F.3d at 918.

## B.   Preliminary Injunction

Bankruptcy courts have the power to grant injunctive relief under 11 U.S.C. § 105(a), which states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Section 105(a) enables a bankruptcy court in appropriate circumstances to enjoin actions not covered by the automatic stay and actions that are excepted from the automatic stay. "Section 105(a) contemplates injunctive relief in precisely those circumstances where the parties are 'pursuing actions in other courts that threaten the integrity of a bankrupt's estate.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1242 (6th Cir. 2010).

Injunctive relief is "an extraordinary remedy that may only be issued upon a clear showing that plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 129 S. Ct. 365, 376 (2008). A plaintiff seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm absent a preliminary injunction; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public's interest. *Id.* at 374; *see also American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). The Ninth Circuit has confirmed that its "serious questions" approach survived *Winter* when applied as part of the four-element *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). In other words, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

Initials of Deputy Clerk   sr

IV.     **Discussion**

     A.     **This Court's Jurisdiction Over This Appeal**

        Before addressing the merits of this appeal, the Court must determine whether it has jurisdiction to do so.  District courts have jurisdiction to hear appeals of final judgments, orders, and decrees issued by a bankruptcy court.  *See* 28 U.S.C. § 158(a)(1).  They also have discretion to hear appeals of other interlocutory orders and decrees.  *See* 28 U.S.C. § 158(a)(3).

        In this case, although the injunction is labeled a "preliminary" injunction, the Court concludes that the injunction granted by the Bankruptcy Court constitutes an appealable final decision because nothing in the record indicates that the Bankruptcy Court contemplated further proceedings on the injunction.  *See, e.g., Shugrue v. Air Line Pilots Ass'n, Int'l* (*In re Ionosphere Clubs, Inc.*), 139 B.R. 772, 778 (S.D.N.Y. 1992) ("[W]here the bankruptcy court issues a 'preliminary' injunction, but contemplates no further hearings on the merits of the injunction, apart from the outcome of the reorganization, the injunction is a final, appealable order.").  In addition, Section 158(c)(2) provides that an appeal under section 158(a) "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts." The Third Circuit has stated, *in dicta*, that bankruptcy orders regarding injunctions are appealable as of right pursuant to 28 U.S.C. section 1292(a)(1).  *In re Professional Ins. Mgmt.*, 285 F.3d 268, 282 n. 16 (3d Cir. 2002).

        Moreover, even if the injunction does not constitute an appealable final decision, the Court determines that it should hear the appeal pursuant to the discretion vested in the Court by Section 158(a)(3).  Because parties have a right to appeal a district court order issuing a preliminary injunction, there is no reason a district court, sitting as an appellate court, should not hear an appeal of the same order from a bankruptcy court.  As a district court in Texas has observed:

        Although it is recognized that leave to appeal is discretionary, it is determined that appeal should be allowed in this instance.  As a policy matter, the rulings of a non-Article III bankruptcy court should not be more insulated from appellate review than the rulings of an Article III district court.  The wiser exercise of discretion is to apply § 1292(a)(1) by analogy and allow the appeal of the preliminary injunction.

*In re Reserve Production, Inc.*, 190 B.R. 287, 289–90 (E.D. Tex. 1995).  .

     B.     **The Bankruptcy Court Did Not Err in Granting the Second Stay Motion and Issuing the Preliminary Injunction**

        The Court concludes that the Bankruptcy Court did not err in granting the Second Stay Motion and issuing the preliminary injunction in its December 21, 2015 Order.

        1.     **There are Serious Questions Going to the Merits**

        "[I]f a plaintiff can only show that there are 'serious questions going to the merits' - a lesser showing than likelihood of success on the merits - then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are

Initials of Deputy Clerk  _sr_

satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (*quoting Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011)).

Although the Bankruptcy Court did not make specific findings of fact, it did "find" that the Trustee has at the very least demonstrated that there are "serious questions going to the merits." December 16, 2015 Ruling Re Motion for Preliminary Injunction re 15-1406 [Docket No. 87-1], p. 15. In support of its finding, the Bankruptcy Court relied on the declarations submitted to the Bankruptcy Court by the Roussos Brothers in 1994 in connection with the proposed sale of the Properties which, according to the Trustee, falsely stated that they did not have any interest in O.F. or S.M.B., which were the entities that purchased the Properties. The Bankruptcy Court also relied on the declaration of the Roussos Brothers' counsel, Haberbush, and a letter from Harry and Christine Roussos which amply support the Trustee's allegations that the Roussos Brothers continually owned the Properties that are now the subject of the Arbitration Action. In addition, although the Roussos Brothers raised several arguments as to why the allegations in the Trustee's Complaints were defective and, thus, the Trustee would not prevail on the merits, those arguments were rejected by the Bankruptcy Court's ruling not only when it issued the preliminary injunction, but also its ruling on the motions to dismiss brought by the Roussos Brothers. The Court agrees with the Bankruptcy Court that those arguments are totally meritless.

For example, despite the Roussos Brothers' arguments to the contrary, because the Trustee's claims are based on fraud on the court pursuant to Rule 60(d)(3), "[t]here is no statute of limitations for fraud on the court. And jurisdiction exists to consider such a claim even if there are no adversary parties then present before the court." *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 640 n.10 (N.D. Cal. 1978), *aff'd,* 645 F.2d 699 (9th Cir. 1981). Perjury or nondisclosure of evidence may constitute fraud upon the court if "that perjury or nondisclosure was so fundamental that it undermined the workings of the adversary process itself." *United States v. Estate of Stonehill*, 660 F.3d 415, 45 (9th Cir. 2011). In this case, the Trustee alleges facts sufficient to state a claim for fraud on the court because the Roussos Brothers' allegedly false declarations made it impossible for the Bankruptcy Court to "perform in the usual manner its impartial task of adjudging" the Sale Motion. *Anand v. CITIC Corp. (In re Intermagnetics Am., Inc.)*, 926 F.2d 912 (9th Cir. 1991). The Bankruptcy Court's impartial review was fatally compromised by its lack of awareness of a crucial fact - that the purported arms-length sale was in reality a sale to entities controlled by insiders.

In addition, the Roussos Brothers argue that the Properties were abandoned by the predecessor Chapter 7 trustee, R. Todd Nielson ("Nielson"), in 2001 and, as a result, the current Trustee possesses no ability to undo the Roussos Brothers' fraud. However, as the Bankruptcy Court concluded, Nielson's attempted abandonment of the Properties was a legal nullity. Although Nielson requested in his final report that the Properties be deemed abandoned pursuant to Section 554(c) of the Bankruptcy Code, an order approving his request was never entered. In fact, Harry Roussos filed an objection to the requested abandonment on the grounds that the Properties had already been sold. Under the then-prevailing version of Federal Rule of Bankruptcy Procedure 6007, the Bankruptcy Court was required to conduct a hearing on any objection to a request for abandonment. Although the Bankruptcy Court subsequently entered orders for the payment of professional fees and closed the bankruptcy cases, those orders are silent with respect to abandonment. Moreover, no other orders entered in the bankruptcy cases address the abandonment issue. Finally, whether Nielson had sought technical abandonment of the Properties

Initials of Deputy Clerk _sr_

pursuant to Section 554(c) or actual abandonment pursuant to Section 554(a), because the Properties had already been sold, they had been "otherwise administered" and were no longer "property of the estate" and, thus, could not be abandoned under either subsection (a) or (c) of Section 554.

> **2.    There is a Likelihood of Irreparable Injury if the Bankruptcy Court Had Not Issued the Preliminary Injunction**

A preliminary injunction "may only be granted when the moving party has demonstrated a significant threat of irreparable injury." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999).  The Bankruptcy Court did not err in concluding that the Trustee would have suffered irreparable harm if a preliminary injunction had not been issued.  As the Bankruptcy Court concluded, if the Roussos Brothers and their wives had been left free to prosecute the Arbitration Action to finality, they could have sought to further place the Properties out of the Trustee's reach.  As the Bankruptcy Court noted, Harry and Christine Roussos admitted that the Arbitration Action could result in a transfer of title of the Properties.

In addition, as the Bankruptcy Court also correctly concluded, the potential preclusive effect of the Arbitrator's judgment or findings was sufficient to constitute irreparable harm in the absence of an injunction.  *See, e.g., Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) ("The collateral-estoppel effect of an arbitration proceeding is at issue only after arbitration is completed"); *C.D. Anderson & Co., Inc. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir. 1987) ("[a]n arbitration decision can have *res judicata* or collateral estoppel effect").  Thus, enjoining the Arbitration Action reduces the possibility of inconsistent results and prevents the irreparable harm to the Trustee if the Arbitrator entered findings on crucial points of fact and law that will be resolved later at trial. As such, the risk of *res judicata* and collateral estoppel effects of the Arbitrator's findings and the corresponding depletion of estate assets outweighed any purported prejudice to the Roussos Brothers.  *See, e.g., Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) (holding that potential economic harm may be a factor in considering the balance of hardships).

> **3.    The Balance of Hardships Tips Sharply in Favor of the Trustee**

A bankruptcy court must "identify the harms which a preliminary injunction might cause to defendants and . . . weigh these against plaintiff's threatened injury."  *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 676 (9th Cir.1988) (citation omitted).

In this case, the Bankruptcy Court did not err in concluding that the balance of the hardships tips in the Trustee's favor.  The Court agrees with the Bankruptcy Court that the completion of the Arbitration Action will likely result in further changes in the title to and ownership of the Properties, and that such changes would make it extremely difficult for the Trustee to administer the Properties on behalf of the estate if and when the Trustee prevails in the Adversary Proceedings.  In contrast, the only harm suffered by the Roussos Brothers will be a short delay in completing the Arbitration Action.  Because the Arbitration Action and the Adversary Proceedings each affect the ownership of the Properties, there will be no hardship in allowing the Bankruptcy Court to resolve that issue before resuming the Arbitration Action.

> **4.    Public Policy Favors the Issuance of the Injunction**

Initials of Deputy Clerk _sr_

Courts have held that the interests of creditors in a bankruptcy estate are the equivalent of the "public interest" factor in determining whether to grant an injunction.  *See, e.g., In re Eagle-Picher Indus., Inc.,* 963 F.2d 855, 861 (6th Cir. 1992); *In re Nat'l Century Fin. Enters.*, 289 B.R. 873, 879 (Bankr. S.D. Ohio 2003).  Because a stay of the Arbitration Action will insure that the Properties will remain available to satisfy any judgment, the Bankruptcy Court did not err in concluding that the public interest is served by preserving potential assets for creditors, while permitting the Trustee sufficient time to aggressively pursue the recovery of the Properties.  *In re Metiom, Inc.*, 318 B.R. 263, 272 (S.D.N.Y. 2004)) ("Indeed, courts have found there is a strong public interest in the preservation of a debtor's assets for the purpose of paying creditors").

## V.      Conclusion

For all the foregoing reasons, the Bankruptcy Court's December 21, 2015 Order is **AFFIRMED**.

IT IS SO ORDERED.

Initials of Deputy Clerk __sr__